**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Lisa Peck, et al. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-07239 |
| | ) | |
| CIT Bank, N.A., et al. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs/relators Lisa Peck and Robin Peck ("Relators") bring this *qui tam* action against CIT Bank, N.A., formerly known as OneWest Bank, N.A., formerly known as OneWest Bank, F.S.B. ("CIT Bank" or formerly "OneWest"), and Ocwen Loan Servicing, LLC ("Ocwen") (collectively "Defendants") for civil damages and penalties under the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq*. (Counts I-IV), and two claims for civil penalties and declaratory relief under the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1833a (Counts V and VI). OneWest and PHH Mortgage Corporation, successor to Ocwen, filed two separate motions to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b). For the reasons explained below, the motions to dismiss are granted.

**Background**

The following facts are derived from the Complaint for purposes of the motions now before the Court. On July 27, 2005, Relators executed a mortgage with Mortgage Electronic Registration Systems Inc. as the mortgagee and now defunct AirMortgage as the lender. Unbeknownst to Relators, the mortgage was table-funded by IndyMac Bank, F.S.B ("IndyMac Bank"). Though AirMortgage was listed as the nominal lender, IndyMac Bank created and

directed the lending program. An IndyMac Bank employee performed the review of the Relators' loan documents that were prepared and sent by AirMortgage. While preparing the Relators' loan application, the AirMortgage employee assisting the Relators substantially inflated Lisa Peck's income. Relators also assert, on information and belief, that AirMortgage hired an appraiser to value the Relators' property for significantly more than its actual value.

Based on the Relators' loan documents, it appeared to Relators that they would have a one percent introductory interest rate for a year. However, Relators' loan went into negative amortization after the first month. Relators assert that the negative amortization term was hidden in their loan agreement by confusing terms. Relators further assert that due to the negative amortization feature of their mortgage, their indebtedness reached 110% of the principal, which resulted in their payments increasing by 60% and, ultimately, a faster default.

In September 2005, Relators' loan became part of the IndyMac INDX Mortgage Loan Trust 2005-AR18 ("Trust"). In December 2007, Relators defaulted on their loan. Following Relators' default, IndyMac Bank initiated foreclosure proceedings on April 17, 2008. On July 11, 2008, the Office of Thrift Supervision determined that IndyMac Bank was failing and appointed the Federal Deposit Insurance Corporation ("FDIC") as Receiver of IndyMac Bank and the Conservator of IndyMac Federal Bank, F.S.B. ("IndyMac Federal") ("FDIC-Conservator"), a newly charted bank. On that same day, the FDIC transferred certain IndyMac Bank assets and liabilities to IndyMac Federal.

On March 19, 2009, OneWest entered a purchase agreement with FDIC Conservator to acquire a substantial amount of IndyMac Federal's assets ("Purchase Agreement"), including all deposits and about $20.7 billion in assets, at a reduced price of $4.7 billion. The servicing rights of securitized loans was among the assets acquired by OneWest. Relators allege that pursuant to

negotiations and the Purchase Agreement, OneWest agreed to identify and modify loans in accordance with the FDIC Mortgage Loan Modification Program that met the following criteria: (1) "The collateral securing the mortgage loan is owner-occupied"; (2) "The mortgagor has a first priority lien on the collateral"; and (3) "Either the borrower is at least 60 days delinquent or a default is reasonably foreseeable" ("Qualifying Loans"). Relators also allege that Defendants were obligated—but purposefully failed—to utilize the endorsement provided in Exhibit E of the Purchase Agreement ("Endorsement") in all documents of conveyance. The Endorsement acknowledges the FDIC's possessory interest in the assets and the agency's position in the chain of title. Relators allege that Defendants failed to include the Endorsement in the documents of conveyance to purposefully conceal the origins of the loan to mislead the public.

Relators allege that the FDIC Conservator offered OneWest a discount on the purchase price based on OneWest's representation that it would identify and modify Qualifying Loans. Relators also allege that despite OneWest's contractual obligations under the Purchase Agreement, loan modifications drastically declined following its acquisition of IndyMac Federal's assets. Relators further allege that not only did loan modifications decline, but OneWest, eventually, failed to identify and modify Relators' and others' Qualifying Loans altogether.

The Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac") are government-sponsored enterprises ("GSEs") that were charted by Congress to boost the mortgage market. The GSEs buy mortgage loans and mortgage-related securities. Relators assert, on information and belief, that, at some unidentified point, Freddie Mac purchased the Trust that holds the Relators' mortgage loan. On September 6, 2008, the Federal Housing Finance Agency ("FHFA") became conservator of Fannie Mae and

Freddie Mac. Relators assert that from 2008 to 2012, the U.S. Treasury assisted the GSEs by providing them $187.5 billion.

In or around June of 2013, Relators allege, on information and belief, that Ocwen succeeded OneWest as servicer of the Relators' mortgage loan when it entered into an agreement to purchase certain mortgage servicing rights and related servicing advances from OneWest. Based on this agreement, Relators further allege that Ocwen simultaneously became an assignee of OneWest to the Purchase Agreement and its covenants and obligations are thus binding upon Ocwen. Relators further allege that Defendants entered into mortgage service agreements with the GSEs and, in relation to these agreements, Defendants provided false information to Fannie Mae and Freddie Mac for payments and reimbursements.

The Complaint contains six counts. The first four counts are against Defendants for violations of various subsections of the FCA, 31 U.S.C. § 3729(a)(1)(A-B, D, G), Counts V and VI seek civil penalties and declaratory relief from Defendants under FIRREA. Defendants move to dismiss all counts.

**Legal Standard**

A court must dismiss any action which lacks subject matter jurisdiction. The party asserting jurisdiction has the burden of establishing it under Rule 12(b)(1). *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). On a motion to dismiss for lack of subject matter jurisdiction, "the court is not bound to accept the truth of the allegations in the complaint, but may look beyond the complaint and the pleadings to evidence that calls the court's jurisdiction into doubt." *Bastien v. AT&T Wireless Servs., Inc.*, 205 F.3d 983, 990 (7th Cir. 2000); *see also Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 (7th Cir. 2002).

4

In contrast, when reviewing a defendant's Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012). A motion to dismiss is decided solely on the face of the complaint and any attachments that accompanied its filing. *Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010). To survive a motion to dismiss, plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint is facially plausible when plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The Court may consider "information that is properly subject to judicial notice" when ruling on a motion to dismiss. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The Court may also consider information in the public record. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012); *see also Clark & Leland Condo., LLC v. Northside Cmty. Bank*, 110 F. Supp. 3d 866, 868-69 (N.D. Ill. 2015) (Durkin, J.). The Court declines to take judicial notice of Exhibits A-F attached to Defendant CIT's Motion to Dismiss as their contents would not affect the Court's analysis.

**Discussion**

**1. Public Disclosure Bar**

Defendants move to dismiss Relators' claims pursuant to the public disclosure bar. As a preliminary matter, the Court must address the issue of whether the public disclosure bar is a jurisdictional issue to be decided pursuant to Rule 12(b)(1) instead of a substantive issue to be decided pursuant to Rule 12(b)(6). In 2010, the FCA was amended to remove the phrase that

5

"no court shall have jurisdiction over an action under this section" and was replaced with the statutory language that "[t]he court shall dismiss an action or claim under this section[.]" *See United States ex rel. Cause of Action v. Chi. Transit Auth.*, 71 F.Supp.3d 776, 779, 2014 WL 5333399, at *2 (N.D. Ill. Oct. 20, 2014) (citing 31 § 3730(e)(4)(A)) (Dow, J.). Though the pre-amendment version was undoubtedly jurisdictional, the Seventh Circuit has contemplated whether the amended language should be treated as jurisdictional. *See United States ex rel. Absher v. Momence Meadows Nursing Center, Inc.*, 764 F.3d 699, 706 (7th Cir. 2014). The 2010 amendments to § 3730(e)(4)(A) are not retroactive, and therefore, the applicable version of the subsection is the one that was "in force when the events underlying the suit took place." *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 273 n.6 (7th Cir. 2016) (quoting *United States ex rel. Goldberg v. Rush Univ. Med. Ctr.*, 680 F.3d 933, 934 (7th Cir. 2012)). Here, Relators' contend that the post-amendment version applies because the events giving rise to the present causes of action occurred after 2010. However, it is unclear from the Complaint when Defendants' alleged misconduct took place. At the core of Relators' claims is their assertion that Defendants failed to meet their contractual obligations arising from the Purchase Agreement, dated March 19, 2009. Despite providing a lengthy description of the Defendants' alleged misconduct, Relators fail to provide any facts to assist the Court in determining the timeframe that Defendants alleged misconduct took place. As the alleged misconduct appears to overlap with the date of the amendment, the Court determines that the pre-amendment version governs and, accordingly, will next determine whether the public disclosure bar applies to this case. *See Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 867 F.3d 712, 717 (7th Cir. 2017) (stating that when the alleged conduct pre-dates and post-dates the amendment, the pre-amendment version applies).

Courts conduct a three-step analysis to determine whether the public disclosure bar precludes a *qui tam* action under the FCA. *See Cause of Action*, 815 F.3d at 274 (citing *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009)). First, the court "examines whether the relator's allegations have been 'publicly disclosed.'" *Glaser*, 570 F.3d at 913. If so, the court must next determine "whether the lawsuit is based upon those publicly disclosed allegations." *Id.* "If it is, the court must determine whether the relator is an 'original source' of the information upon which his lawsuit is based." *Id.*

Under the FCA, a public disclosure "occurs when 'the critical elements exposing the transaction as fraudulent are placed in the public domain.'" *Id.* (citing *United States ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 495 (7th Cir. 2003)). Here, Defendants allege that Relators' claims were publicly disclosed in *Beekman*. 2015 WL 4111765. The parties do not dispute whether *Beekman* was in the public domain at the time that Relators brought this action. Therefore, the Court must determine whether the critical elements of Relators' allegations were contained in this prior civil suit.

The gravamen of Relators' allegations in this case is that Defendants engaged in a mortgage fraud scheme in violation of the FCA. Similarly, in *Beekman*, the relator brought a *qui tam* action against OneWest and IndyMac Bank alleging that defendants engaged in a fraudulent scheme involving defendants' submission of false claims and records to the government for payments related to mortgage loans in violation of the FCA. The relator in *Beekman* alleged that OneWest entered into a loss sharing agreement with the FDIC and exploited that agreement in several ways, including fraudulently manipulating mortgage loans into foreclosure rather than modifying those loans, even though loan modification was the most appropriate course of action. Compl. at ¶¶ 22, 36, 40, 96-97, 104-09, *United States ex rel. Beekman v. IndyMac Federal Bank*

7

*FSB, et al.*, No. 12CV81138, 2012 WL 12526237 (S.D.Fl. Oct. 16, 2012). The relator also alleged that defendants knowingly "engaged in acts to defraud the Government by submitting Shared Loss claims to the Government for monies to which they were not entitled[.]" *Id.* at ¶ 110. Additionally, relator's alleged that "defendants [falsely] certified to the Government that they had complied with all federal laws and statutes." *Id.* at ¶ 97. As the claims in *Beekman* are almost identical to the claims in this matter, this Court finds that the critical elements of Relator's allegations were publicly disclosed. Moreover, the fact that Defendant Ocwen is not identified by name in *Beekman* is not enough to draw the conclusion that Relators' claims are not publicly disclosed. *See United States ex rel. Gear v. Emergency Med. Assoc. of Ill., Inc.*, 436 F.3d 726, 729 (7th Cir. 2006) (noting that the court was "unpersuaded by an argument that for there to be public disclosure, the specific defendants named in the lawsuit must have been identified in the public records.").

The Court must next determine whether Relators' allegations were "based upon" the public disclosure. A claim is "based upon" disclosed allegations "when the relator's allegations and the publicly disclosed allegations are substantially similar." *Glaser*, 770 F.3d at 915; *see also United States ex rel. Heath v. Wisconsin Bell, Inc.*, 760 F.3d 688, 691 (7th Cir. 2014). Here, the similarity between Relators' claims of FCA violations stemming from mortgage fraud and the claims contained in *Beekman* demonstrate that Relators' allegations are based upon publicly disclosed information. *See Beekman,* 2015 WL 4111765. The Court is unpersuaded by Relators' argument that their claims are not based on the fraud claims in *Beekman* because Relators have personal knowledge regarding Defendants' alleged misconduct from its own personal experience as well as the fact that Defendants performed their own investigation that identified additional mortgages that were potentially mishandled by Defendants. The public

8

disclosure bar may not be avoided by a relator by simply adding "'extra details' or 'additional instances' of false claims." *United States ex rel. McGee v. IBM Corp.*, 81 F. Supp. 3d 643, 658 (N.D. Ill. 2015) (Durkin, J.) (quoting *Heath*, 760 F.3d at 691).

Relators can avoid the public disclosure bar if they can demonstrate that they are the "original source" of the information upon which the allegations were based. *See Bellevue*, 867 F.3d at 720. To do so, Relators must establish that they have knowledge of wrongdoing that is (1) independent of the publicly disclosed allegations, (2) materially adds to those allegations, and (3) voluntarily provided this information to the Government before filing their case. 31 U.S.C. § 3730(e)(4)(B). At the outset, Relators do not allege any facts indicating that Relators voluntarily provided their knowledge of Defendants' wrongdoing to the government prior to bringing this cause of action. This is fatal to Relators' claims. Because Relators have failed to allege facts indicating that they have satisfied the third prerequisite of § 3730(e)(4)(B), Relators are unable to establish that they are the original source of the publicly disclosed allegations. Accordingly, Relators' claims in this case are precluded by the public disclosure bar, and, therefore this Court lacks federal question jurisdiction and will dismiss Relators' *qui tam* action under Rule 12(b)(1).

Even if this Court does has jurisdiction, Relators' Counts I-IV should be dismissed for failing to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b) and Counts V and VI should be dismissed for failing to satisfy the prerequisites to bringing a private right of action pursuant to FIRREA.

**2. Rule 9(b)**

Defendants dispute the specificity with which Relators allege their claims under the FCA. Because Counts I-IV fail to satisfy Federal Rule of Civil Procedure Rule 9(b) pleading standards, Defendants argue, it should be dismissed. When alleging an FCA violation, the complaint must

satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005). Under Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud...." Fed. R. Civ. 9(b). In other words, Relators must provide the "who, what, when, where, and how" of the circumstances surrounding the complaint. *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal citation omitted); *see also United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009).

Relators allege violations of four sections of the FCA. Count I alleges violations of section 3729(a)(1)(A), which provides liability for anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval[.]" 31 U.S.C. § 3729(a)(1)(A). Count II alleges violations of section 3729(a)(1)(B), which provides liability for anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim[.]" 31 U.S.C. § 3729(a)(1)(B). Count III alleges violations of section 3729(a)(1)(D), which provides liability for anyone who "has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property[.]" 31 U.S.C. § 3729(a)(1)(D). Count IV alleges violations of section 3729(a)(1)(G), which provides liability for anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government[.]" 31 U.S.C. § 3729(a)(1)(G).

The essential condition of an FCA violation is the actual submission of a false or fraudulent claim. *Mason v. Medline Indus., Inc.*, 731 F. Supp. 2d 730, 736 (N.D. Ill. 2010)

(Conlon, J.). In asserting an FCA violation, a relator cannot simply "'describe a private scheme in detail but then ... allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the government.'" *United States ex rel. Dolan v. Long Grove Manor, Inc.*, No. 10-cv-368, 2014 WL 3583980 at *3 (N.D. Ill. July 18, 2014) (Bucklo, J.) (quoting *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002)). Put differently, to satisfy Rule 9(b), the complaint must have "some indicia of reliability" that an actual false claim was submitted to the government for payment. *Id.* at *5. After carefully reviewing the complaint, the Court finds that Counts I-IV are insufficiently pleaded. Most glaring to the Court is Relators' failure to allege facts that show with some indicia of reliability that Defendants, in fact, submitted a false statement to the government to receive money. In other words, the Complaint provides little to no details about the "who, what, when, where, and how" as required by Rule 9(b). *See Borsellino*, 477 F.3d at 507.

Defendants further assert that statements made to GSEs are not actionable under the FCA as GSEs are private corporations and not government actors. The Seventh Circuit has made clear that Fannie Mae and Freddie Mac are private corporations. *Federal National Mortgage Association v. City of Chicago*, 874 F.3d 959, 960 (7th Cir. 2017). Therefore, the FCA only attaches liability in this case if Relators can show that the specific money or property claimed was intended to "'be spent or used on the Government's behalf or to advance a Government program or interest' and the Government 'provide at least a portion of the specific money … requested.'" *Garg v. Covanta Holding Corp.*, 478 Fed. Appx. 736, 741 (3rd Cir. 2012) (emphasis in original) (quoting 31 U.S.C. § 3729(b)(2)(A)(ii)). Accordingly, when alleging an FCA violation, the pleadings must contain specific facts that assert the Government's money was

11

spent as a result of the fraudulent claim. *See United States ex rel. Heath v. Wisconsin Bell, Inc.*, 111 F. Supp. 3d 923, 927 (E.D. Wis. 2015) (citing *United States ex rel. Yesudian v. Howard University*, 153 F.3d 731, 738 (D.C. Cir. 1998)).

Here, Relators fail to allege facts sufficiently linking a fraudulent claim by Defendants to actual government spending. The fact that the government has provided funding to Fannie Mae and Freddie Mac does not relieve Relators' of their obligation to connect the fraud to specific government payments. *See id.* "The FCA requires more than fraud against anyone who happens to receive money from the federal government. Were that the case, the scope of the FCA would be enormous." *Garg*, 478 Fed. Appx. at 741. Although GSEs rely on federal government money at times, they "still generate[] revenue pursuant to [their] operation within the secondary mortgage market." *United States ex rel. Todd v. Fidelity National Financial, Inc.*, No. 12-cv-666, 2014 WL 4636394 at * 11 (D. Colo. Sept. 16, 2014). Therefore, a payment by Freddie Mac and Fannie Mae does not automatically result in spending by the United States government. Relators' failure to connect the alleged fraud with specific money spent by the federal government renders their allegations inadequate under Rule 12(b)(6) and especially Rule 9(b).

**3. FIRREA Claims**

Defendants also contend that Counts V and VI of the Complaint should be dismissed because FIRREA does not provide a private right of action and Relators fail to plead facts indicating that they have met the prerequisites under the Crime Control Act to bring this *qui tam* action. This Court agrees. Pursuant to section 1833 of FIRREA, the United States can bring a civil action to recover civil penalties for enumerated criminal predicated offenses that involve certain financial institutions and government agencies. Pub. L. 101–73, 103 Stat. 183 (1989). FIRREA, however, does not provide individuals a private right of action. *See Hicks v.*

12

*Resolution Tr. Corp.*, 767 F. Supp. 167, 171 (N.D. Ill. 1991) (Lindberg, J.), *aff'd on other grounds*, 970 F.2d 378 (7th Cir. 1992) (holding that the "plaintiff lacks standing to bring an action under 12 U.S.C. § 1833a" because such an action "must be commenced by the Attorney General"). Nevertheless, the Crime Control Act affords individuals a limited exception to bring a *qui tam* action under section 1833a of FIRREA if plaintiff has satisfied certain prerequisites, including the receipt of approval from the Attorney General. *See* 12 U.S.C. §§ 4206-07.

Here, Relators fail to allege any facts that support that they have satisfied the prerequisites as required under the Control Act to bring their FIRREA claims. Instead, Relators assert that they should be permitted leave to replead FIRREA's claims as "common-law type remedies," without specifically identifying what those remedies would be. (Dkt. 36 at 22). Because Relators have not met the prerequisite requirements to bring a private cause of action for alleged violations of 12 U.S.C. § 1833a, this Court lacks federal question jurisdiction and will dismiss the Relators' FIRREA claims under Rule 12(b)(1).

**Conclusion**

For the foregoing reasons, Defendants' motions to dismiss are granted, with prejudice [25, 27].

**IT IS SO ORDERED.**

Date: 11/18/2020

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge